IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**ALICE MAE BRADLEY,**

      **Plaintiff,**

v.                                    **CASE NO. 2:11-cv-00976**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

## **PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disabled widow's benefits under section 402(e) of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Alice Mae Bradley (hereinafter referred to as "Claimant"), filed an application for disabled widow's benefits on May 2, 2008, alleging disability as of March 17, 2008, due to pain in both knees, diabetes, high blood pressure, depression, high cholesterol, arthritis, veins in legs are getting smaller, and heart problems. (Tr. at 19, 115-19, 135-42, 168-74, 200-05.) The claim was denied initially and upon reconsideration. (Tr. at 19, 59-63, 67-69,.) On April 9, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 70-71.) The video hearing was held on March 3, 2010 before the Honorable Theodore Burock. (Tr. at 29-54, 79, 86.) By decision dated

March 31, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 19-28.) The ALJ's decision became the final decision of the Commissioner on October 17, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On December 12, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d

866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ stated that Claimant is the unmarried widow of the deceased insured worker, Vernon Ralph Bradley, and has attained the age of 50. Claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act. (Tr. at 21.) The prescribed period ends on April 30, 2013. Id. The ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. Id. Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, diabetes mellitus, and osteoarthritis of the right knee. (Tr. at 21-24.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 24.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 24-27.) As a result, Claimant can return to her past relevant work as a child monitor. (Tr. at 27.) On this basis, benefits were denied. (Tr. at 27-28.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner

denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 56 years old at the time of the administrative hearing. (Tr. at 33, 35.) She has a seventh grade education. (Tr. at 36.) In the past, she worked as a child monitor. (Tr. at 49.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

<u>Physical Health Evidence</u>

Records from Aracoma Drug Company show that Claimant was prescribed

medications on 299 occasions from June 5, 2000 to January 23, 2010 for which Claimant paid $4,831.86 of the $13,447.10 total cost. (Tr. at 376-87.)

Records indicate Claimant has had annual mammogram screenings with negative findings at St. Mary's Medical Center from May 7, 2001 to April 4, 2007. (Tr. at 339-46, 349-51.)

Records indicate Claimant had abdominal testing on May 27, 2003 at St. Mary's Medical Center. (Tr. at 347-48.) Eric L. Leonard, M.D. stated: "Renal asymmetry. This is nonspecific…The bowel gas pattern is within normal limits…No areas of abnormal mass effect are seen…No acute process." (Tr. at 347-48.)

On April 25, 2003, Claimant had a cardio stress test at St. Mary's Medical Center due to complaints of shortness of breath. (Tr. at 325-27.) Ellen Thompson, M.D. concluded: "This Cardiolite is within normal limits. Ejection fraction 59%... 1. Normal exercise stress test. 2. Good functional capacity. 3. Normal hemodynamic response to exercise. 4. No induction of chest pain. 5. No significant arrhythmias." (Tr. at 325-26.)

Records indicate Claimant was a patient at Scott Orthopedic Center, Inc. From February 7, 2005 to November 2, 2007 for right knee pain, surgery, and subsequent surgical follow-up by Stanley, S. Tao, M.D. (Tr. at 235-50, 388-409.)

On May 25, 2006, Marsha Anderson, M.D., radiologist, stated in a report of an MRI of the right knee: "IMPRESSION: Tear of the body and posterior horn of the medial meniscus with associated osteoarthritis, Joint effusion." (Tr. at 229, 330.)

On July 27, 2006, Dr. Tao reported that Claimant had a "right knee arthroscopy with partial medial meniscectomy" due to "[o]steoarthritis, right knee with medial meniscus tear." (Tr. at 227, 319, 408.) Dr. Tao concluded: "The patient tolerated the procedure well,

was extubated, and sent to the recovery room in stable condition...Weightbearing as tolerated with crutches, therapy, aspirin, and followup in 10 to 14 days." (Tr. at 228, 320, 409.)

On September 6, 2006, Douglas Hibbs, PT [Physical Therapist], Logan Physical Therapy, stated that Claimant began treatment on July 31, 2006 due to her right knee arthroscopic repair. (Tr. at 230, 410.) He reported that she had received 15 treatments, "had progressed well with therapy, and exhibits no difficulties during treatment. She is discharged at this time to continue her home program on her own." Id.

On September 13, 2006, Dr. Tao completed a form for Claimant to receive family and medical leave: "Alice Mae Bradley...Respite-SC...Autism Services Center...Patient had surgery 7-27-06. Needed to be off work to regain strength & mobility." (Tr. at 233.) He stated the duration Claimant was "temporarily totally disabled from working" was from "7-27-06 thru 9-11-06." (Tr. at 233.)

On September 26, 2006, Claimant had an osteoporosis scan at Cabell Huntington Hospital. (Tr. at 332.) The evaluator, Richard E. McWhorter concluded: "Impression: With a T-score of -1.0. The patient is considered normal." Id.

Records indicate Claimant was treated on 16 occasions at the Harts Health Clinic from March 26, 2007 to January 11, 2010. (Tr. at 285-310, 352-75, 417-18.) The handwritten progress notes are largely illegible although the words "follow up...allergy...leg pain...low back...DM... Hyperlipidemia... HTN...Depression/Anxiety" are legible and multiple lab reports are included in the records. Id.

On August 6, 2008, a State agency medical source provided a consultative examination report. (Tr. at 251-57.) The evaluator, Roger C. Baisas, M.D., diagnosed

6

Claimant with polyarticular degenerative arthritis, hypertension, diabetes mellitus, and mental depression. (Tr. at 254.) He stated that she was 5' 3" tall and weighed 173 pounds with a blood pressure of 127/86.[1] (Tr. at 252.) He found:

> We have here a case of Claimant, Ms. Alice Mae Bradley, a 55-year-old white female formerly employed with "Direct Care Staff" with autistic services for four years until she decided to retire on April 1, 2008. She declared that she could not do the work anymore with children as much as she used to enjoy it before. Since then our Claimant has become a housewife essentially, her husband having passed away on April 22, 2008; "I live by myself in a house that I am still paying mortgage on but I have a vehicle paid for". She does not have any source of income as her husband's life insurance was nullified because of the accident.[2] Anyway, she gets by with help "from my kids and friends".
>
> The claimant is a dropout from "eighth grade and knows how to read and write". Otherwise, she does not have any other skills to enable her to acquire a job in the workforce suitable for her current capabilities. She has complaints of a lot of pain from her arthritic knees but she has had no signs of complications from diabetes. Her blood pressure is partly under control, but she would have episodes of depression from time to time.
>
> It appears that our claimant is still grieving over the loss of her husband and is not quite sure of the future is stored for her. She goes to church regularly, "I was baptized just last year". The claimant does NOT have food stamps or medical card, "as I have not qualified for either". The claimant appears to be in dire need of at least a regular medical check-up and visits for her uncontrolled hypertension and diabetes, besides a psychiatrist for her depression.

(Tr. at 254-55.)

On August 20, 2008, a State agency medical source completed a Physical Residual Functional Capacity Assessment [PRFCA]. (Tr. at 277-84.) The evaluator, Marcel

---

[1] Claimant testified on March 3, 2010 that she was 5' 3" tall and weighed 164 pounds, stating that her doctor "wanted me to lose weight." (Tr. at 35.)

[2] Claimant testified at the March 3, 2010 hearing that she received "about $2,400.00" per month from her "husband's Union WA [sic, UMWA, United Mine Worker's of America, retirement] and his Black Lung." (Tr. at 36.)

Lambrechts, M.D., stated that Claimant's primary diagnosis was "Ty [Type] 2 diabetes, fair control." (Tr. at 277.) Her secondary diagnosis was "[k]nees pain from OA [osteoarthritis], R > [greater than] L." Id. He stated Claimant's "other alleged impairments" to be "[d]epression." Id. He found regarding exertional limitations that Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, and push and/or pull unlimited, other than that as shown for lift and/or carry. (Tr. at 278.) Claimant was found to be able to do all postural limitations "occasionally." (Tr. at 279.) Claimant had no manipulative, visual or communicative limitations. (Tr. at 280-81.) Regarding environmental limitations, she was unlimited regarding wetness, humidity and noise; should avoid concentrated exposure to extreme temperatures and fumes, odors, dusts, gases, poor ventilation, etc.; and was to avoid even moderate exposure to vibration and hazards. (Tr. at 281.) Dr. Lambrechts concluded:

> This claimant has ty 2 diabetes with fair control so far. She has arthritis in several joints but mostly in both knees. She also c/o [complains of] SOB [shortness of breath] but we have no report of PFTs and I did not find a reason for it. She had a normal EKG when tested. I feel that her symptoms are magnified and that she is not fully credible. RFC [residual functional capacity] is reduced.

(Tr. at 282.)

On March 4, 2009, a State agency medical source completed a case analysis. (Tr. at 311, 312.) The evaluator, Caroline Williams, M.D. stated: "File reviewed 03/04/09. On recon, claimant alleges change in condition and new condition; however, face-to-face interviewer on recon observed no problems (as on initial) and no new medical evidence

submitted / found in file.  Therefore, RFC of 08/20/08 affirmed as written." Id.

On March 6, 2009, a State agency medical source completed a case analysis.  (Tr. at 313.)  The evaluator, John Todd, M.D. stated: "I have reviewed all the evidence in the file and the PRTF of 8/18/2008 is affirmed as written." Id.

On April 17, 2009, Claimant had a cardio stress test at St. Mary's Medical Center due to complaints of shortness of breath and chest pain.  (Tr. at 334-36, 354-55.)  Ellen Thompson, M.D. concluded:

> 1.  Normal ECG response to exercise Cardiolite stress test with no evidence of     ischemia.
> 2.  No chest pain during stress test.
> 3.  No arrhythmia during stress test.
> 4.  Duke treadmill score of +6 with low risk for cardiovascular event.
> 5.  Excellent functional capacity for age.
> 6.  Appropriate hemodynamic response to exercise Cardiolite stress test.
> 7.  Nuclear report to follow under separate cover.

(Tr. at 334.)

Dr. Thompson further found: "1.  Myocardial perfusion imagining within normal limits.  2.  Preserved left ventricular systolic function with normal wall motion and wall thickening."  (Tr. at 336.)

On July 21, 2009, a progress note from Harts Health Center states: "Low back and leg pain.  Suspect leg pain is radiculopathy…LS spine films.  Arrange MRI of LS spine."  (Tr. at 374.)

On July 24, 2009, Charles M. Siegler, M.D. interpreted Claimant's lumbar spine x-ray which was performed upon referral by Linda L. Kessinger, M.D., Harts Health Center.  (Tr. at 353, 418.)  Dr. Siegler stated: "There is disc space height loss at L2-3, L4-5, and L5-S1.  There are facet degenerative changes at L5-S1.  There is anterior osteophytosis at the

L4-5 level. No fracture or subluxation. Impression: Multilevel degenerative changes." Id.

On January 11, 2010, unsigned progress notes from Harts Health Center state that Claimant is taking medication for diabetes, hyperlipidemia, hypertension and depression/anxiety. (Tr. at 375.) Regarding Claimant's osteoarthritis complaints, the notes state: "OA - not using any meds R [regarding] hips and knee pain." Id.

Mental Health Evidence

On August 8, 2008, a State agency medical source completed a consultative psychological evaluation of Claimant. (Tr. at 258-62.) The evaluator, Kelly Robinson, M.A., licensed psychologist, stated that Claimant reported no mental health treatment, regular education classes, and that she worked as a direct care staff worker until "quitting in 4/08 due to 'they cancelled my insurance.'" (Tr. at 259.) Ms. Robinson concluded:

> **MENTAL STATUS EXAMINATION**
> **Orientation** - She was alert throughout the evaluation. She was oriented to person, place, time and date.
> **Mood** - Observed mood was euthymic.
> **Affect** - Affect was broad and reactive.
> **Thought Processes** - Thought processes appeared logical and coherent.
> **Thought Content** - There was no indication of delusions, obsessive thoughts or compulsive behaviors.
> **Perceptual** - She reports no unusual perceptual experiences.
> **Insight** - Insight was fair.
> **Judgment** - Within normal limits based on her response to the finding the letter question. She stated "take it to the post office."
> **Suicidal/Homicidal Ideation** - She denies suicidal or homicidal ideation.
> **Immediate Memory** - Immediate memory was within normal limits. She immediately recalled 4 of 4 items.
> **Recent Memory** - Recent memory was within normal limits. She recalled 3 of 4 items after 30 minutes.
> **Remote Memory** - Remote memory was within normal limits based on ability to provide background information.
> **Concentration** - Concentration was mildly deficient based on her score of seven on the Digit Span subtest of the WAIS-III.
> **Psychomotor Behavior** - Normal.

**DIAGNOSTIC IMPRESSION**
AXIS I:       296.32         Major Depressive Disorder, Recurrent, Moderate
AXIS II:      799.9          Diagnosis Deferred
AXIS III:     By self report: bilateral knee pain, arthritis, diabetes, hypertension and high cholesterol...

**DAILY ACTIVITIES**
**Typical Day**:
Ms. Bradley goes to bed at 12:00 am and gets up at 10:00 am. She describes her typical day as "I get up, go to the bathroom, take my blood sugar, have two cups of coffee, sit on the porch and watch the traffic and then go back in and take a shower, get dressed and go back out and sit on the porch and talk on the phone."
**Activities**:
**Daily** - showers, talks with several family members on the phone, sits on the porch, heats food in the microwave, takes her blood sugar and goes to bed
**Weekly** - goes to church independently and does the laundry independently
**Monthly** - goes to the doctor and grocery shopping with her daughter or her son. She states "my knees are so bad and sometimes I can't read what I need to read sometimes."
**Hobbies/Interests**: Listening to music
**SOCIAL FUNCTIONING**
During the evaluation, social functioning was within normal limits based on her interaction with the examiner and staff.
**CONCENTRATION**
Attention/concentration were mildly deficient based on her score of seven on the Digit Span subtest of the WAIS-III.
**PERSISTENCE**
Persistence was within normal limits based on the MSE.
**PACE**
Pace was within normal limits based on the MSE.
**CAPABILITY TO MANAGE BENEFITS**
Mr. Bradley appears capable to manage any benefits she might receive.
**PROGNOSIS**: Fair.

(Tr. at 26-62.)

On August 18, 2008, a State agency medical source completed a Psychiatric Review Technique form. (Tr. at 263-76.) The evaluator, Timothy Saar, Ph.D., opined that Claimant's affective disorder/major depressive disorder impairment was not severe. (Tr. at 263, 266.) He found Claimant had no limitation regarding activities of daily living and

11

maintaining social functioning, mild limitation in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. (Tr. at 273.) He concluded that the evidence does not establish the presence of the "C" criteria. (Tr. at 274.) Dr. Saar concluded: "Clmt [claimant] appears credible as claims concur with MER [medical evidence of record]. Evidence does not support severe limitations in F.C. [functional capacity] due to a mental impairment. Decision - Impairment not severe." (Tr. at 275.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ "failed to follow the 'slight abnormality' standard in finding that the claimant's degenerative disc disease of the lumbar spine and associated radiculopathy is non-severe." (Pl.'s Br. at 2) Claimant further asserts:

> Additionally, the ALJ's RFC does not incorporate all of the claimant's limitations imposed by all of her significant impairments, thus rendering [the] VE testimony, as well as the ALJ's decision that the claimant's [sic] is capable of past relevant work, erroneous...
>
> SSR 96-3p further provides that "an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities that has no more than a minimal effect on the ability to do basic work activities."
>
> The claimant testified that she suffers from constant leg pain, separate from her knee pain. She stated that her treating physician attributed this pain to degenerative disc disease of her lumbar spine, arthritis and narrow veins...
>
> The ALJ opined that the claimant's back impairment and associated radiculopathy was non severe based on the fact that the record does not contain an MRI and that the claimant testified that she took only over-the-counter medications to control her symptoms. However, the claimant testified that she did not have an MRI because it cost too much, whereas she does not have a medical card or medical insurance. She further testified that over-the-counter ibuprofen does not control her pain.
>
> As the record and the claimant testimony reveal, her leg pain is more than a slight abnormality and has more than a minimal effect on her ability to do

> basic work activities...By failing to include all of the relevant limitations related to the claimant's multitude of impairments in assessing the RFC, the ALJ committed reversible error.

(Pl.'s Br. at 2-4.)

The Commissioner's Response

The Commissioner responds that Claimant did not satisfy her burden of proving that she had a severe back impairment. (Def.'s Br. at 9.) More specifically, the Commissioner asserts:

> The evidence of record, including Dr. Baisas' unremarkable clinical findings, Plaintiff's failure to raise with Dr. Baisas her back condition as an impairment that contributed to her alleged inability to work, her lack of treatment for her back condition, her repeated denials of back pain, and her failure to allege a back impairment in her application for benefits all support the ALJ's decision that Plaintiff did not have a severe back impairment.
>
> \* \* \*
>
> Moreover, the fact that Plaintiff denied experiencing back pain twice during the administrative hearing also supports the ALJ's decision that her back condition was a non-severe impairment. At the administrative hearing, the ALJ asked Plaintiff if she had any back pain and Plaintiff responded, "no sir" (Tr. 39). Later in the hearing, when discussing the results of her July 2009 back x-ray, the ALJ confirmed with Plaintiff her prior testimony that she did not have pain associated with her back and Plaintiff again confirmed this fact (Tr. 44).
>
> Finally, when completing her application for WIB, Plaintiff contemporaneously completed an Adult Disability Report form. When asked what illnesses, injuries, or conditions limited her ability to work, Plaintiff did not identify having a back impairment that limited her ability to work (Tr. 136)...While Plaintiff did identify "arthritis" in her application as a condition that limited her ability to work, she presumably meant the arthritis involving the joints in her fingers that she complained of to Dr. Baisas shortly after filing her application (Tr. 252). Nothing in the record suggests that Plaintiff was referring to degenerative changes in her spine. Therefore, substantial evidence supports the ALJ's decision that Plaintiff did not have a severe...[back] impairment.

(Def.'s Br. at 10-13.)

Analysis

Claimant argues that because the ALJ "failed to follow the 'slight abnormality' standard in finding that the claimant's degenerative disc disease of the lumbar spine and associated radiculopathy is non-severe", the ALJ's decision is not supported by substantial evidence. (Pl.'s Br. at 2.)

The Commissioner responds that Claimant did not satisfy her burden of proving that she had a severe back impairment and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 9.)

Under current law, a severe impairment is one "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2011); see also 20 C.F.R. § 404.1521(a) (2011); Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2011). Examples of basic work activities are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

Social Security Ruling ("SSR") 96-3p provides that "[a]t step 2 of the sequential evaluation process, an impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work

activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities. " SSR 96-3p, 1996 WL 362204, *34469 (July 2, 1996).

In his decision, the ALJ found that Claimant had the severe impairments of obesity, diabetes mellitus, and osteoarthritis of the right knee and that Claimant's alleged back pain and leg pain associated with her back pain are non-severe impairments:

> These impairments are established by the medical evidence and are "severe" within the meaning of the Regulations because they cause significant limitation in the claimant's ability to perform basic work activities.
>
> The claimant also alleged back problems and associated leg pain; the claimant testified that her treating doctor told her than an x-ray of her back revealed some abnormalities and that she had arthritis. However, she testified that she does not experience any pain in her back; she testified that she experienced symptoms of constant pain in her legs, separate from her knee pain, and that her treating doctor told her the pain was caused due to her back, arthritis, and narrow veins. On documents submitted in connection with her application for benefits, the claimant indicated that the limitations she experienced were the result of knee pain and did not mention that they were affected by any back pain (Exhibits 5E, 10E, and 11E). On June 9, 2009, the claimant reported to her primary care physician that she experienced pain in her hips and legs, but no pain above the waist. On July 21, 2009, she reported that her pain was somewhat relieved with lying down, and that she stopped taking prescription medication to relieve her symptoms of pain because it did not work; however, she experienced pain from her low back to her ankles that worsened with walking. Her treating physician suspected that her leg pain was radiculopathy from L3 in her back and suggested an MRI of the claimant's lumbar spine. On January 11, 2010, physical examination of the claimant's extremities revealed no abnormalities and she did not report any symptoms of pain. On July 21, 2009, an x-ray of the claimant's lumbar spine revealed multilevel degenerative changes; however, the undersigned finds no evidence in the record of an MRI of the claimant's lumbar spine (Exhibit 20F). The claimant's pain back [sic, back pain] and leg pain was reportedly relieved with rest and the claimant testified that she took only over-the-counter ibuprofen to control her symptoms of pain. Therefore, the undersigned finds that the claimant's alleged back pain and leg pain associated with her back pain are non-severe impairments...

To be a severe impairment the medical evidence must establish more than a

> slight abnormality or combination of slight abnormalities which would have more than a minimal effect on an individual's ability to work. The impairment must significantly limit a person's physical or mental ability to do basic work activities (SSR 85-28) for a continuous period of at least twelve months. The undersigned finds that the above named impairments are "not severe" (20 CFR §§ 404.1520(a) and (c) and 416.920(a) and (c) and SSR 96-3p) in that they cause no more than minimally relevant limitations.

(Tr. at 21-23.)

> On June 9, 2009, the claimant's primary care physician noted that she would be referred to a specialist for evaluation of her arthritis; however, the record does not contain any evidence of such referral. On January 11, 2010, the claimant was not taking any prescription medication to relive her symptoms of osteoarthritis; the record indicates that the claimant attempted to decrease the cost of her medications (Exhibits 8F and 20F). However, the claimant testified at the hearing that she received $2,400 monthly from her deceased husband's United Mine Workers of America (UMWA) [pension] and black lung benefits…
>
> The claimant received essentially routine and/or conservative care and has never received treatment from a specialist since the alleged onset date.
>
> As to side effects of medications, the claimant has not alleged any side effects from the use of medications.
>
> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.
>
> As to the opinion evidence, on August 20, 2008, Marcel Lambrechts, M.D., completed a physical assessment form and opined that the claimant was limited to light exertion with occasional postural limitations…(Exhibit 7F). On March 4, 2009, Caroline Williams, M.D., affirmed this opinion, despite the claimant's alleged change in her condition (Exhibit 9F). The undersigned gives significant weight to the opinions of these state agency reviewing physicians; subsequent evidence received in the file reveals no more than conservative care with no objective findings to support any further exertional restrictions.
>
> In sum, the above RFC assessment is supported by the claimant's testimony and written statements in connection with the clinical facts, medical findings, and opinions of treating, examining, and non-examining physicians.

(Tr. at 26-27.)

16

The court proposes that the presiding District Judge find that substantial evidence supports the ALJ's determination that Claimant's back impairment was not severe and that the ALJ properly included all of the relevant limitations related to Claimant's impairments in assessing the RFC. The ALJ's findings are consistent with and supported by substantial medical evidence of record and are consistent with the applicable regulations cited above and SSR 96-3p.

The evidence of record, Claimant's lack of treatment for a back condition, and her failure to allege a back impairment in her application for benefits all support the ALJ's decision that Claimant did not have a severe back impairment. Claimant twice responded to the ALJ at the hearing that she did not have back pain. (Tr. at 39, 44.) A January 11, 2010 progress note from Harts Health Center states that while Claimant is taking medication for diabetes, hyperlipidemia, hypertension and depression/anxiety, she is not taking any prescribed medicine for her osteoarthritis complaints: "OA - not using any meds R [regarding] hips and knee pain." (Tr. at 375.) There is no mention of back pain in the progress note.

Additionally, Claimant told the psychological evaluator, Kelly Robinson that she worked as a direct care staff worker until "quitting in 4/08 due to 'they cancelled my insurance.'" (Tr. at 259.) Claimant told Dr. Baisas that "she decided to retire on April 1, 2008. She declared that she could not do the work anymore with children as much as she used to enjoy it before." (Tr. at 254.) In neither evaluation did Claimant assert that she could not physically do her job due to leg or back pain as she is currently asserting.

Regarding Claimant's assertion that she could not afford a back MRI, the undersigned finds this unpersuasive in light of Claimant's testimony that she received

17

"about $2,400" monthly from her deceased husband's retirement and other benefits.  (Pl.'s Br. at 3.)  (Tr. at 36.)

The hypothetical question posed to the vocational expert by the ALJ incorporated the impairments and limitations which are supported by the evidence:

> Okay.  First hypothetical: Assume an individual the claimant's age, educational experience who has a residual functional capacity for light work, occasional climbing of ladders and stairs, occasional balance, stoop, kneel, crouch and crawl; no concentrated exposure to extreme in temperature or dampness; no concentrated exposure to fumes, odors, gases in length or duration, not even moderate exposure to vibrations, no hazards, climbing ladders or scaffolds, unprotected heights; dangerous equipment things of that nature.  Can the individual engage in past relevant work either as done in the national economy or as she did it?

(Tr. at 51.)

In response the vocational expert testified that a person with those limitations could perform claimant's past relevant work: "Well, as she described the one job well both or either one, yes she can do her past relevant work based on that past hypothetical or such an individual could."  Id.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific

written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

January 15, 2013
Date

Mary E. Stanley
United States Magistrate Judge